**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| New Hope Wesleyan Church, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER GRANTING IN PART AND** |
| vs. | ) | **DENYING IN PART THIRD-PARTY** |
| | ) | **DEFENDANTS' MOTIONS FOR** |
| Ecclesia Construction Company, LLC, | ) | **SUMMARY JUDGMENT** |
| d/b/ Ecclesia Building Strategies, | ) | |
| | ) | |
| Defendant and Third-Party | ) | Case No. 1:23-cv-105 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Chief Industries, Inc., d/b/a Chief | ) | |
| Buildings; Hite Architecture, P.A.; Schultz | ) | |
| Engineering Group, P.C.; Ironhidez | ) | |
| Construction LLC, f/k/a Froemming | ) | |
| Construction; Commercial Exterior | ) | |
| Specialties, LLC, | ) | |
| | ) | |
| Third-Party Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Commercial Exterior Specialties, LLC, | ) | |
| | ) | |
| Fourth-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Sergio Alaya Gomez d/b/a Stucco | ) | |
| Solutions, | ) | |
| | ) | |
| Fourth-Party Defendant. | ) | |

Before the Court are two motions for summary judgment. Third-Party Defendant Shultz

Engineering Group, P.C. ("Shultz") filed a motion for summary judgment on November 13, 2025.

See Doc. No. 90. Ecclesia Construction Company, LLC ("Ecclesia") filed a response in opposition

1

to the motion on December 11, 2025. See Doc. No. 94. Shultz filed a reply on December 22, 2025. See Doc. No. 97. On January 14, 2026, Third-Party Defendant Hite Architecture, P.A. ("Hite") filed a motion for summary judgment. See Doc. No. 101. Ecclesia filed a response in opposition to the motion on February 11, 2026. See Doc. No. 107. Hite filed a reply on February 25, 2026. See Doc. No. 111. For the reasons set forth below, the motions for summary judgment are granted in part and denied in part.

## I.      BACKGROUND

This case arises out of the construction of a renovation and an addition to the New Hope Wesleyan Church located at 721 26th Street West, Williston, North Dakota, 58801 ("the Project"). On May 2, 2013, New Hope and Ecclesia entered into a construction agreement for Ecclesia to perform architectural, structural, civil, mechanical, electrical, fire alarm, and interior design services for new construction and renovations of the church. Pursuant to the agreement, Ecclesia agreed to provide all design, labor, material, equipment, and supervision to complete (1) new construction of a sanctuary, lobby, and adult space, and (2) renovation of the existing building to convert it to a children's and youth ministry space. On May 8, 2013, New Hope entered into an agreement with Western Property Management, LLC ("WPM") under which WPM agreed to provide project management and owner's representative consulting services in support of the Project. Ecclesia entered into agreements in connection with the Project with Chief Industries, Inc., Hite Architecture, P.A., Schultz Engineering, Ironhidez Construction LLC, Commercial Exterior, and Froemming Construction in 2012 and 2013.

The Project commenced in May 2013 and was constructed in two phases. Phase 1 included the construction of a new building, including the sanctuary, lobby, and office space. Ecclesia

completed Phase 1 around May 2014. Phase 2 involved the remodel of the existing church. The Phase 2 remodel began around June 2014. Ecclesia completed Phase 2 around December 2014.

During Phase 1 of construction, New Hope and Ecclesia became aware of leaks in the roof of the property in areas constructed by Ecclesia. In December 2013 or January 2014, New Hope observed water intrusion in several areas of the building. New Hope identified additional concerns, including missing anchor bolts, HVAC system balancing, missing steel components, concrete issues, and doors that did not close properly. On December 15, 2015, WPM documented outstanding concerns at the property in a letter to Ecclesia, including: (1) roof leaks and cold infiltration into wall cavities; (2) a failed structural connection inspection; and (3) roof drain and stormwater issues. Other defects were found at later periods, including Ecclesia's discovery of structural defects pursuant to its own investigation in 2017 and the discovery of more than forty leaks in the tower of the church in 2018.

Between 2014 and 2020 Ecclesia and New Hope engaged in ongoing communication regarding roof repairs. Ecclesia unsuccessfully attempted to repair the roof. On October 7, 2020, New Hope's legal counsel sent a letter to Ecclesia stating that New Hope intended to perform the repair work itself. The letter instructed Ecclesia to cease all direct communication with New Hope and route all future communication through counsel. New Hope retained American Engineering Testing, FCI Contractors, Mercer Engineering, PIE Consulting & Engineering, Sylvan Site Services, and WMP to verify the scope and necessity of the repair work and to complete the repairs. New Hope started the repair work in the Summer of 2022 and completed it in the Fall of 2022. After completion, New Hope sent Ecclesia a bill totaling $1,634,235.01 for the cost of the repairs.

On May 2, 2023, New Hope brought claims against Ecclesia in state court for breach of contract and negligence. See Doc. No. 1-2. Ecclesia removed the action to federal court on May

30, 2023, on the basis of diversity of jurisdiction. Id. New Hope alleges Ecclesia's actions in constructing the project were negligent and breached the parties' construction agreement. On June 2, 2025, Ecclesia filed a third-party complaint against Chief Industries, Inc., Hite Architecture, P.A., Schultz Engineering, Ironhidez Construction LLC, Commercial Exterior Specialties, LLC, and Froemming Construction asserting claims of negligence, breach of contract, breach of warranties, and indemnification and/or contribution in connection to the construction of the project. See Doc. No. 2. Ecclesia alleges that any damages New Hope suffered were caused by the Third-Party Defendants, to the extent that such damages were not caused by New Hope. On June 3, 2025, Commercial Exterior filed a fourth-party complaint against Sergio Alaya Gomez d/b/a Stucco Solutions, for negligence, breach of contract, breach of warranty, and contribution and/or indemnification in connection with the construction of the project.

On November 4, 2025, the Court denied summary judgment motions filed by Ecclesia, Ironhidez Construction LLC, and Shultz. See Doc. No. 89. Schutlz and Hite now request the Court grant summary judgment as to Ecclesia's claims against them. The motions have been fully briefed and are ripe for disposition.

II.     **STANDARD OF REVIEW**

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id. The

4

purpose of summary judgment is to assess the evidence and determine if a trial is genuinely necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the responsibility of informing the court of the basis for the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The non-moving party may not rely merely on allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial. Id.; Fed. R. Civ. P. 56(c)(1). The court must consider the substantive standard of proof when ruling on a motion for summary judgment. Anderson, 477 U.S. at 252. If the record taken as a whole and viewed in a light most favorable to the non-moving party could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment is appropriate. Matsushita, 475 U.S. at 587.

## III.    LEGAL DISCUSSION

### A.    APPLICABLE STATUTE OF LIMITATIONS

The Third-Party Defendants argue Ecclesia's claims are barred by the statute of limitations. The Third-Party Defendants argue Ecclesia's claims fall under the two-year professional negligence statute of limitations while Ecclesia argues its claims fall under the six-year ordinary negligence statute of limitations. The Third-Party Defendants argue the two-year professional negligence statute controls as to Ecclesia's negligence, breach of contract, breach of warranty, and indemnification and/or contribution claims. Ecclesia argues that summary judgment is not

appropriate even if the two-year limitations period applies because the claims' accrual date is a factual determination.

In North Dakota, general negligence claims are subject to a six-year statute of limitations period under N.D.C.C. § 28-01-16. See Lang v. Barrios, 472 N.W.2d 464, 466 (N.D. 1991). Malpractice claims are subject to a two-year statute of limitations period under N.D.C.C. § 28-01-18(3). Under Section 28-01-18(3), "[a]n action for the recovery of damages resulting from malpractice" must be commenced within two years after the claim for relief has accrued.

The North Dakota Supreme Court examined the applicability of the malpractice statute to professionals in *Sime v. Tvenge Assocs. Architects & Planners, P.C.*, 488 N.W.2d 606 (N.D. 1992). Malpractice is defined as "the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result that injury, loss, or damage [occurs] to the recipient of those services or to those entitled to rely upon them." Id. at, 608 (N.D. 1992). "Simply stated, malpractice means professional negligence." Id. at 609 (citation omitted). Architects and engineers are professionals for the purposes of Section 28-01-18(3). However, the professional negligence limitations period does not automatically apply simply because an individual is a professional. A court must inquiry "whether or not the specific complained of act or omission was the failure to conform to professional standards of skill and learning." Id. "In other words, the question is whether the complained of act or omission is a matter of malpractice or is simply ordinary negligence." Id. "[T]he actual nature of the action or the actual nature of the subject matter" is determinative when applying the two-year statute of limitations. In *Sime*, the North Dakota Supreme Court concluded that "the term malpractice refers to those actions where the fact-finder must evaluate the reasonableness of the defendant's conduct in light of the special

knowledge and skill he or she is presumed to have as a member of the profession, regardless of the relationship between the parties." Id. at 610.

Ecclesia argues its claim is grounded in ordinary negligence and can be assessed by a jury using ordinary experience. The Court must look at the actual nature of the subject matter and the factual allegations underlying the claim to determine which statute of limitations applies. See McMahon v. Sanford, 2025 ND 184, ¶ 14, 27 N.W.3d 478. Although the factual allegations are sparce in Ecclesia's complaint, it states that Hite "was to provide *architectural services*" and Schultz was to provide "mechanical, electrical, plumbing, and fire protection *engineering services*" for the project. See Doc. No. 2, p. 6-8 (emphasis added). Ecclesia alleges that the Third-Party Defendants "owed a duty to use reasonable care in the provision of labor, goods, and *services in the performance of their work* in accordance with any applicable codes, ordinances, regulations, law, or governmental and/or industry standard." See Doc. No. 2, p. 8 (emphasis added). Ecclesia further alleges that it "relied on the Third-Party Defendants' *expertise in connection with the services the Third-party Defendants were to perform* on the Project." Id. (emphasis added).

The language of the complaint is instructive. Ecclesia hired Schultz and Hite to perform engineering services and architectural services (i.e. professional services) in connection with the Project. Ecclesia argues the Third-Party Defendants owed it a duty in performing those services and relied on their expertise in connection with the services they performed. It is clear that Ecclesia's negligence claim relates to the engineering services and architectural services provided, rather than "basic tasks that any competent provider, professional or not, must perform" (Doc. No. 94, p. 6) as Ecclesia suggests in its brief. Ecclesia argues a jury can assess the Third-Party Defendants' conduct based on common experience yet states in its complaint that it "relied on the Third-Party Defendants' expertise in connection with the services the Third-Party Defendants were

to perform." See Doc. No. 2, p. 8. Common experience is insufficient to assess whether Hite and Schultz breached their duty in performing professional services when Ecclesia relied on their professional expertise in the performance of those very services.

Further, Ecclesia alleges the Third-Party Defendants failed to use reasonable care in the performance of their work in accordance with industry standards. In determining whether specific claims against engineers and architects are subject to Section 28-01-18(3), the North Dakota Supreme Court focuses on whether or not the specific complained of act or omission was the failure to conform to professional standards of skill and learning." Sime v. Tvenge Assocs. Architects & Planners, P.C., 488 N.W.2d 606, 609 (N.D. 1992). Here, Ecclesia alleges that Schultz and Hite failed to conform with industry standards. Ecclesia argues the professional negligence statute of limitations does not apply because Schultz's obligations were "acts of performance, not exercises of specialized engineering discretion. They involve the things a reasonable engineering firm would do under the circumstances." See Doc. No. 94, p. 7. This argument is contradictory. Ecclesia compares Schutlz's performance to that of an engineering firm yet argues that the jury can assess the claim based on common experience. Ecclesia's complaint is sounded in professional malpractice. See McMahon, 2025 ND at ¶ 14 (finding claims are properly sounded in malpractice when "factual allegations underlying the claims require proof of the defendants' deviation from the applicable standard" of a professional). The Court concludes the two-year professional malpractice statute of limitations applies to Ecclesia's claim against Schultz and Hite.

### B.      ACCRUAL OF CLAIMS

Next, the Court must determine when Ecclesia's claims accrued. Generally, the statute of limitations begins to run from the commission of a wrongful act giving rise to the cause of action.

BASF Corp. v. Symington, 512 N.W.2d 692, 695 (N.D. 1994). However, when an injury only manifests itself through the passage of time, the North Dakota Supreme Court applies the discovery rule for determining when the cause of action accrues. "Under the discovery rule, the action does not accrue and the limitations period does not begin to run until the claimant knows, or with reasonable diligence should know, that a potential claim exists." Id. "When the discovery rule applies, the statute of limitations begins to run when the plaintiff knows, or with reasonable diligence should know, of (1) the injury, (2) its cause, and (3) the defendant's possible negligence." Am. Fam. Ins. v. Waupaca Elevator Co., 2012 ND 13, ¶ 18, 809 N.W.2d 337.

The Third-Party Defendants argue the statute of limitations commenced on October 5, 2020, when Ecclesia sent a letter informing them of the water leaks New Hope experienced. See Doc. No. 102-2. The letter informed the Third-Party Defendants of Ecclesia's belief that a lawsuit from New Hope was forthcoming. Prior to the letter, Ecclesia retained architects from Raths, Raths, & Johnson, Inc. ("RRJ") to identify the cause of the leaks and determine what repairs were necessary. RRJ issued a report pursuant to their investigation, which Ecclesia provided to the Third-Party Defendants along with the October 5, 2020 letter. The letter informed the Third-Party Defendants that RRJ identified significant defects in the Third-Party Defendants' design and installation work. Id. at 2-3. The Third-Party Defendants argue that the letter shows that Ecclesia was aware of the injury as of October 5, 2020.

Although the letter notified the Third-Party Defendants of RRJ's identification of defects in their work and the estimated cost of completing past repairs and future repairs,[1] Ecclesia did not allege any damages arising out of repair work in its third-party complaint. The complaint does not reference any repairs that Ecclesia made to fix the Third-Party Defendants' allegedly negligent

---

[1] Ecclesia did not perform the future repairs it told the Third-Party Defendants they were liable for. The repairs were completed by different contractors hired by New Hope.

work. In the compliant, Ecclesia seeks damages for the Third-Party Defendants' negligence, breach of contract, and breach of warranty only to the extent that Ecclesia is liable to New Hope. Ecclesia does not allege it suffered damages directly from the Third-Party Defendants' negligence, breach of contract, and breach of warranty. Ecclesia alleges that if it becomes liable to New Hope, such damages were caused by the Third-Party Defendants' actions. Ecclesia argues that its letter to the Third-Party Defendants that put them on notice of New Hope's potential claims does not mean that it knew or with reasonable diligence should have known, that a potential claim existed at the time. Ecclesia contends the date of accrual of its negligence claim is a factual dispute.

"For purposes of applying a statute of limitations, determining when a cause of action accrues normally presents a question of fact; however, if the material facts are undisputed, the issue of whether a statute of limitations has run becomes a question of law." Hysjulien v. Hill Top Home of Comfort, Inc., 2013 ND 38, ¶ 13, 827 N.W.2d 533. See also Johnson v. Hovland, 2011 ND 64, ¶ 13, 795 N.W.2d 294; Abel v. Allen, 2002 ND 147, ¶ 11, 651 N.W.2d 635. The Court finds that there are numerous factual issues in dispute that a jury needs to resolve concerning Ecclesia's actual knowledge; whether it exercised reasonable diligence to discover the cause and existence of any injury or damage; causation; and the Third-Party Defendants' possible negligence which all preclude the grant of summary judgment at this stage. Therefore, the Court denies the Third-Party Defendants' motion for summary judgment as to Ecclesia's negligence claim.

### C.    **<u>BREACH OF WARRANTY CLAIM</u>**

Hite argues that even if Ecclesia's breach of warranty claim is not time-barred, Ecclesia cannot prove a breach of warranty because the implied warranty of workmanship does not apply to architects performing professional services. Although Schultz did not raise this specific

argument as to the breach of warranty claim, the Court notes that the findings and analysis are applicable as to Ecclesia's claim against Schultz. Ecclesia brings a claim against the Third-Party Defendants for a breach of both express warranties and implied warranties. However, Ecclesia does not dispute the contention that Hite made no express warranties in its contract with Ecclesia. Schultz also did not make an express warranty in its contract with Ecclesia. Ecclesia alleges Hite "impliedly warranted to Ecclesia Construction that their work would be free of construction defects and deficiencies and would conform to any and all applicable codes, ordinances, regulations or governmental and/or industry standards applicable at the time, and that their work would be performed in a workmanlike manner." See Doc. No. 2, p. 10.

North Dakota has recognized an implied warranty of fitness for the purpose in construction contracts where:

> (1) the contractor holds himself out, expressly or by implication, as competent to undertake the contract; and the owner (2) has no particular expertise in the kind of work contemplated; (3) furnishes no plans, designs, specifications, details, or blueprints; and (4) tacitly or specifically indicates his reliance on the experience and skill of the contractor, after making known to him the specific purposes for which the building is intended.

Leno v. K & L Homes, Inc., 2011 ND 171, ¶ 10, 803 N.W.2d 543. The North Dakota Supreme Court has repeatedly applied implied warranties of workmanship to contractors and builders. However, the North Dakota Supreme Court has not addressed whether implied warranties apply to services performed by professionals, such as architects.

The majority of jurisdictions that have addressed the issue have declined to apply implied warranties in connection with architects and engineers. In *City of Mounds View v. Walijarvi*, 263 N.W.2d 420 (Minn. 1978), the Minnesota Supreme Court declined to extend the implied warranty doctrine to vendors of professional services. The court noted that "[t]he majority position limits the liability of architects and others rendering professional services to those situations in which the

11

professional is negligent in the provision of his or her services. With respect to architects, the rule

was stated as early as 1896 by the Supreme Court of Maine." In reaching its conclusion, the court

said,

> [t]he undertaking of an architect implies that he possesses skill and ability, including taste, sufficient to enable him to perform the required services at least ordinarily and reasonably well; and that he will exercise and apply in the given case his skill and ability, his judgment and taste, reasonably and without neglect. But the undertaking does not imply or warrant a satisfactory result. The reasoning underlying the general rule as it applies both to architects and other vendors of professional services is relatively straightforward. Architects, doctors, engineers, attorneys, and others … are continually called upon to exercise their skilled judgment in order to anticipate and provide for random factors which are incapable of precise measurement … Because of the inescapable possibility of error which inheres in these services, the law has traditionally required, not perfect results, but rather the exercise of that skill and judgment which can be reasonably expected from similarly situated professionals.

Id. at 423-24.

Similarly, the Court of Appeals of New Mexico adopted the majority view that "an implied

warranty of sufficiency of plans and specifications will not be imposed against services performed

by professionals, including architects and engineers." State, ex rel. Risk Mgmt. Div. of Dep't of

Fin. & Admin. v. Gathman-Matotan Architects & Planners, Inc., 1982-NMCA-130, 98 N.M. 790,

793, 653 P.2d 166. The court concluded, "[t]raditionally, architects, along with other professionals

such as doctors and lawyers, do not promise a certain result. The professional is usually employed

to exercise the customary or reasonable skills of his profession for a particular job." The court

explained that the doctrine of implied warranties was developed, in part, due to "the lack of privity

between the manufacturer and the buyer, the difficulty of proving negligence against a distant

manufacturer using mass production techniques, and the better ability of the mass manufacturer to

spread the economic risks among its consumers." However, "[t]hese considerations are not

applicable in a contract for professional services." In *Queensbury Union Free Sch. Dist. v. Jim*

12

*Walter Corp.*, 91 Misc. 2d 804, 806 398 N.Y.S.2d 832 (Sup. Ct. 1977), the court in New York concluded, "[a]bsent a guarantee of specific results, those engaged in the professions are held only to the standard generally followed in their particular profession and are required only to use due care in the performance of the professional services rendered." The court held that although architects and engineers may be held responsible for the negligent performance of their professional services, there is no cause of action against architects for a breach of implied warranty.

The Court agrees with the majority of jurisdictions that the doctrine of implied warranties does not apply to professional services. Although architects and engineers can be liable for professional malpractice as discussed above, an implied warranty of workmanship is not intended to apply to professionals in the performance of professional services. The law requires architects and engineers to exercise the skill and judgment that can be reasonably expected of their profession for a particular job, but the undertaking of the professional services does not warrant perfect results. The Court concludes that the implied warranty of workmanship that has historically been applied to builders and contractors does not apply to the services of architects and engineers. Accordingly, Ecclesia cannot maintain a claim for a breach of implied warranty against Hite and Schultz. The Court grants the Third-Party Defendants' motion for summary judgment as to Ecclesia's warranty claim.

### D.    <u>**CONTRIBUTION CLAIM**</u>

Schultz and Hite argue that Ecclesia's contribution claim must be dismissed because North Dakota law does not permit a third-party contribution claim absent concerted action or joint and several liability. Under North Dakota's comparative fault scheme, liability amongst tortfeasors is several only, not joint, unless the parties acted in concert. Under North Dakota law,

> When two or more parties are found to have contributed to the injury, the liability of each party is several only, and is not joint, and each party is liable only for the amount of damages attributable to the percentage of fault of that party, except that any persons who act in concert in committing a tortious act or aid or encourage the act, or ratifies or adopts the act for their benefit, are jointly liable for all damages attributable to their combined percentage of fault.

N.D.C.C. § 32-03.2-02. Under N.D.C.C. § 32-38-02(2), which governs contribution amongst tortfeasors:

> The right of contribution exists only in favor of a tort-feasor who has paid more than that tort-feasor's pro rata share of the common liability, and that tort-feasor's total recovery is limited to the amount paid by that tort-feasor in excess of that tort-feasor's pro rata share. No tort-feasor is compelled to make contribution beyond that tort-feasor's own pro rata share of the entire liability.

N.D.C.C. § 32-38-02(2). Accordingly, there is no basis for a third-party contribution claim without joint and several liability amongst tortfeasors, and liability is several only in the absence of concerted action.

The North Dakota Supreme Court addressed this concept in *Target Stores, a Div. of Dayton Hudson Corp. v. Automated Maint. Servs., Inc*., 492 N.W.2d 899 (N.D. 1992). Target Stores ("Target") brought a negligence claim against Automated Maintenance Services, Inc. ("Automated") regarding a fire that occurred at a Target store in Grand Forks, North Dakota. Automated employees were responsible for cleaning the store using propane-powered floor buffers, which were manufactured by Pioneer/Eclipse Corporation ("Pioneer/Eclipse"). Automated gave instructions to its propane suppliers to underfill the propane tanks in the floor buffers because they did not operate properly when overfilled. On the night of the incident, an Automated employee released propane from two tanks, believing the tanks were overfilled. The propane ignited when another Automated employee started a floor buffer in the same area. Target sued Automated in federal court for causing the fire and the resulting damage. Automated then brought a third-party action against Pioneer/Eclipse, the floor buffer manufacturer, alleging

14

negligence. Thereafter, the United States District Court for the District of North Dakota certified the following question of law to the North Dakota Supreme Court:

> In a case involving claims of products liability and negligence, governed by Chapter 32–03.2 of the North Dakota Century Code, where a plaintiff elects not to sue all potential tortfeasors, and where the non-sued potential tortfeasors did not act in concert with, aid, encourage, ratify, or adopt the act of a defendant, does Chapter 32–03.2 when read in concert with NDCC § 32–38–01(2), preclude a third party action by a defendant against a non-sued potential tortfeasor?

Target, 492 N.W.2d at 901.

The North Dakota Supreme Court answered in the affirmative, stating that "[a] non-sued tort-feasor, who did not act in concert with, nor aid or encourage a sued tort-feasor, nor ratify or adopt that tort-feasor's act, is not liable for contribution to the sued tort-feasor." Id. The Supreme Court concluded that Pioneer/Eclipse could not be held jointly liable to Target and could not be required to contribute to Automated's liability because there was no allegation that Pioneer/Eclipse and Automated "acted in concert, aided or encouraged each other, or ratified or adopted for their benefit, a tortious act committed by either of them." "[T]he absence of a claim for concerted action among concurrent tort-feasors precludes a third-party claim for contribution between them." The Supreme Court concluded that "[w]hen liability of a concurrent tort-feasor is statutorily directed to be several, that directive precludes liability of the tort-feasor for more than a percentage share of the damages, and precludes a claim for contribution between concurrent tort-feasors." Id. at 902-03.

In *Pierce v. Shannon*, 2000 ND 54, 607 N.W.2d 878, the North Dakota Supreme Court again discussed contribution claims against third parties.

> The import of our holding in *Target* is clear: Absent concerted action, there is no third-party claim for contribution among tortfeasors. There is no allegation of concerted action in this case. Because a tortfeasor can now be held liable only for its own pro rata share of fault under N.D.C.C. § 32–03.2–02, there is no basis for contribution under N.D.C.C. § 32–38–01(2).

15

Id. at ¶ 11. In *Reed v. Univ. of N. Dakota*, 1999 ND 25, ¶ 34, 589 N.W.2d 880, the North Dakota Supreme Court "decline[d] to broadly construe the 'in concert' language of N.D.C.C. § 32–03.2–02 to include concurrent negligence, because that construction would effectively render meaningless the general rule for several liability."

Ecclesia argues that the motions for summary judgment on the Third-Party Defendants' contribution claim are premature because factual issues must be resolved by a jury. Ecclesia contends a jury must first decide how fault should be allocated amongst Ecclesia, Shultz, and Hite. However, New Hope did not bring claims against Schultz or Hite. Under North Dakota law, Ecclesia can only be held liable for its pro rata share of fault because its liability is several rather than joint, absent a showing of concerted action. There is no claim of concerted action in this case. There is no evidence that Ecclesia and the Third-Party Defendants acted in concert, aided or encouraged each other, or ratified or adopted for their benefit, a tortious act committed by either of them. The absence of concerted action among the Third-Party Defendants and Ecclesia precludes Ecclesia's claim for contribution. Therefore, the Court concludes that Schultz and Hite are entitled to summary judgment on Ecclesia's contribution claim.

## E.     <u>INDEMNIFICATION CLAIM</u>

The Third-Party Defendants also argue that Ecclesia cannot maintain its indemnity claim. Ecclesia argues that summary judgment on its indemnity claim is premature. "Indemnity is an equitable remedy which permits a party to recover reimbursement from another for the discharge of a liability that, as between the two parties, should have been discharged by the other. An indemnity action is of a separate and distinct nature from the tort or contract action which underlies it." <u>Superior, Inc. v. Behlen Mfg. Co.</u>, 2007 ND 141, ¶ 11, 738 N.W.2d 19 (citations omitted).

Under North Dakota law, a right of indemnity may arise by express agreement or by implication. Id. at ¶ 12. When there is no express contractual duty to indemnify, indemnity "may be recovered if the evidence establishes an implied contract or if one party is exposed to liability by the action of another party who, in law or in equity, should make good the loss of the other." Grinnell Mut. Reinsurance Co. v. Ctr. Mut. Ins. Co., 2003 ND 50, ¶ 40, 658 N.W.2d 363. Contract and tort are the two bases for implied indemnity in North Dakota. Superior, 2007 ND at ¶ 12. Ecclesia's indemnity claim relies on implied indemnity because there are no express agreements for indemnification between Ecclesia and the Third-Party Defendants.

The Third-Party Defendants argue that Ecclesia cannot maintain a claim for tort-based, (or "common-law") implied indemnity. Ecclesia argues that factual issues preclude summary judgment on this matter. A common-law right to indemnification exists when "there is a finding of great disparity in the fault of the parties and one of the tortfeasors has paid for a loss that was primarily the responsibility of the other. The apportionment of fault is a question of fact for the jury to resolve at trial. Whether an implied right of indemnification exists will be an issue for the Court to resolve post-trial." Campbell v. BNSF Ry. Co., 756 F. Supp. 2d 1109, 1113 (D.N.D. 2010) (internal citation omitted). Generally, the right to sue for indemnity does not arise "until the indemnitee has suffered an actual loss through the payment of a judgment or settlement." Grinnell, 2003 ND at ¶ 47. An exception exists when indemnification is asserted in a third-party action. "[A] third-party indemnity claim may be filed before it accrues, in order to promote a settlement of all claims in one action. However, such claim cannot be determined before the underlying claim establishing liability and damages is determined." Id. The Third-Party Defendants' motions for summary judgment on Ecclesia's indemnity claim are premature. Liability and damages on New Hope's claims against Ecclesia must be determined at trial before the indemnity claim can be

determined. Therefore, the Court concludes that Ecclesia may maintain a claim for indemnification at this stage of the proceedings.

## IV. <u>CONCLUSION</u>

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law. For the reasons set forth above, the Third-Party Defendants' motions for summary judgment (Doc. Nos. 90 and 101) are **GRANTED IN PART AND DENIED IN PART** as explained herein.

**IT IS SO ORDERED.**

Dated this 21st day of April, 2026.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court
